**CROMAN CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 98–405 C.

United States Court of Federal Claims.

Oct. 1, 1999.

Alan I. Saltman, Washington, DC, for plaintiff. Richard W. Goeken, Washington, DC, of counsel.

John S. Groat, with whom were Kathryn A. Bleecker, Assistant Director, David M. Cohen, Director, and David W. Ogden, Acting Assistant Attorney General, Civil Division, Department of Justice, Washington, DC, for defendant. Leslie Lagomarcino, Department of Agriculture; Susan Cook and Paul Boudreaux, Environmental and Natural Resources Division, Department of Justice, Washington, DC, of counsel.

### OPINION AND ORDER

HEWITT, Judge.

This matter comes before the court on Plaintiff's Motion for Summary Judgment on Count One of its Amended Complaint and Defendant's Motion to Dismiss and Cross–

Motion for Summary Judgment. Plaintiff, Croman Corporation ("Croman"), seeks damages suffered as a result of the Forest Service's allegedly unauthorized suspension of the Clearview timber sale contract (the "contract"). Plaintiff's Amended Complaint ("Complaint") at 25. Defendant, the United States, acting through the Forest Service of the Department of Agriculture (the "Forest Service"), seeks to have the court dismiss Croman's case for lack of jurisdiction on the grounds that Croman's current claim was neither properly submitted to the contracting officer for final decision, nor properly asserted in its Complaint or Motion for Summary Judgment. Defendant's Motion to Dismiss and Cross Motion for Summary Judgment ("Def.'s MTD") at 15, 21. In the alternative, defendant asks the court to deny plaintiff's motion for summary judgment and grant the government's cross motion for summary judgment. Id. at 1. For the following reasons, plaintiff's motion is DENIED. The government's motion to dismiss is GRANTED in part. The government's motion for summary judgment is also GRANTED in part.

I. Background

The contract is for the sale and harvest of timber located on the Happy Camp Ranger District of the Klamath National Forest in California. Plaintiff's Proposed Findings of Uncontroverted Fact ("PPFUF") at ¶ 2; Defendant's Corrected Statement of Genuine Issues ("DSGI") at ¶ 2. Standard Veneer and Timber Company was awarded the contract in 1970 and transferred all rights and obligations under the contract to Standard Plywood Corporation in 1973. PPFUF at ¶¶ 1, 6; DSGI at ¶¶ 2, 6. Croman purchased the contract in 1979. PPFUF at ¶ 28; DSGI at ¶ 28.

The original contract was to terminate on March 31, 1974. PPFUF at ¶ 4; DSGI at ¶ 4. Prior to Croman's purchase of the contract, the contract termination date was ex-tended many times by agreement of the parties. PPFUF at ¶¶ 7, 8, 10, 13, 14, 15; DSGI at ¶¶ 7, 8, 10, 13, 14, 15. The contract contained a standard provision, Paragraph C8.22, allowing for adjustments to the contract termination date in certain circumstances.[1] Defendant's Appendix ("Def.'s App.") at 209. The relevant portion of Paragraph C8.22 provides:

(a) Purchaser experiences delay in starting scheduled operations or interruption in active operations either of which stops removal of Included Timber from Sale Area through curtailment in felling and bucking, yarding, skidding, and loading, hauling or road construction, as scheduled in B6.31, of 10 or more consecutive calendar days during a Normal Operating Season due to causes beyond Purchaser's control, including but not limited to acts of God, acts of the public enemy, acts of Government, labor disputes, fires, insurrections or floods.

Id. at 210. After Croman's purchase of the contract, several Contract Term Adjustments ("CTAs") were granted to Croman extending the contract termination date. PPFUF at ¶¶ 29, 42, 43, 44, 58; DSGI at ¶¶ 29, 42, 43, 44, 58.

On January 12, 1988, the National Audubon Society and 32 of its chapters in Oregon, Washington and California filed a petition with the United States Fish and Wildlife Service ("FWS"), an establishment within the United States Department of the Interior, to list the marbled murrelet[2] as a threatened species in the states of Oregon, Washington and California under the Endangered Species Act ("ESA") 16 U.S.C. § 1531 et seq.; 53 Fed.Reg. 40479-01, (1988); Complaint at ¶ 13; Answer at ¶ 13. The FWS solicited comments and on January 6, 1989 it issued a revised notice of possible inclusions to the List of Endangered and Threatened Wildlife. Complaint at ¶ 16; Answer at ¶ 16. The

---

1. Paragraph C8.22 was inserted by a contract modification signed in 1982. Def.'s App. at 209–210. The original contract also contained a provision that treated "acts of Government" as a basis for contract termination adjustments. Def.'s App. at 59.

2. The marbled murrelet is a small bird that lives in both marine and inland forested environments along the North American Pacific coast. Complaint at ¶ 12. The marbled murrelet travels inland to nest, typically between April and September. Complaint at ¶ 12.

marbled murrelet was included in the category of "proposing to list as endangered or threatened is possibly appropriate." *Id.* The FWS extended the comment period to May 31, 1990. 55 Fed.Reg. 7746–03 (1990); Complaint at ¶ 17; Answer at ¶ 17. On April 16, 1991, multiple chapters of the Audubon Society filed a lawsuit due to the FWS's failure to decide whether to list the marbled murrelet within the time requirements of the ESA. Complaint at ¶ 19; Answer at ¶ 19; *see Marbled Murrelet (Brachyramphus Marmoratus) v. Babbitt,* 918 F.Supp. 318 (W.D.Wash.1996).

On June 20, 1991, the FWS published a proposed rule to list the marbled murrelet as a threatened species. 56 Fed.Reg. 28362–01 (1991); Complaint at ¶ 20; Answer at ¶ 20. Effective September 28, 1992, the FWS listed the marbled murrelet of Washington, Oregon, and California as a threatened species under the ESA. 57 Fed.Reg. 45,328 (1992).

There are several factual disputes regarding the events that occurred between the Forest Service and Croman in 1992 as a result of growing environmental concerns for the marbled murrelet. The most pertinent disputes are the following: whether or not the Forest Service unilaterally suspended the contract; and if the Forest Service did in fact order the suspension, when was the suspension ordered and under what circumstances.

The government argues that there is no clear evidence that the Forest Service unilaterally suspended the contract and that the lack of documentary evidence of a unilateral suspension makes the question of whether or not a breach occurred difficult to determine. Transcript of oral argument held on August 12, 1999 ("Tr.") at 24–28 ("the difficulty in the analysis in this case is the absence of any clear statements of what constitutes the alleged acts that breached the contract"). The government has asserted several alternative defenses to Croman's allegations because "entirely different reasons might have justi-fied the suspension at different points in time." *Id.* at 27.

Croman initially argued that "on September 28, 1992 the Forest Service unilaterally suspended all operations on the sale. This was apparently done to permit the Forest Service to consult with the U.S. Fish and Wildlife Service...." Plaintiff's Claim Letter to the contracting officer, May 1, 1997, Plaintiff's Appendix ("Pl.'s App.") at 245. In plaintiff's initial complaint[3] filed with this court on April 24, 1998, plaintiff similarly asserted that "[i]n September, 1992 Croman was operating the Clearview sale when, on or about September 28, 1992, the Forest Service suspended Croman's operations, purportedly due to the listing of the marbled murrelet as a threatened species under the Endangered Species Act ("ESA") by the United States Fish and Wildlife Service ("FWS")." Plaintiff's Initial Complaint at ¶ 11. In a subsequent Motion for Summary Judgment filed on December 22, 1998, plaintiff alleged that on October 9, 1992 the Forest Service advised it that operations "were suspended until the consultation [with the Fish and Wildlife Service] was completed." Pl.'s MSJ at 8 (citing Declaration of Mr. Cross, co-founder and Secretary of Croman). In its Supplemental Proposed Findings of Uncontroverted Fact ("PSPFUF") filed on July 15, 1999, plaintiff alleged that it was suspended from operations by the Forest Service sometime "in late July 1992" during a phone call by Mr. Wilson, of the Forest Service, to Mr. Cross, a part-owner of Croman. PSPFUF at ¶ 79 (citing Deposition of Mr. Cross). Plaintiff claims that this suspension was memorialized in a letter from the "forest supervisor contracting officer." *Id.* However, such a document has not been located by either party. *See* Tr. at 24–30.

Regardless of the circumstances surrounding the suspension of the contract, it is agreed that Croman resumed operations around August 28, 1995 and completed logging the sale in June of 1996. *See* Final Decision of Contracting Officer, September

---

**3.** Plaintiff filed an Amended Complaint on September 15, 1998 adding Count Three, "Taking Without Just Compensation." The taking count was not addressed by the parties in their motions and is not addressed by the court in this opinion.

The court notes that the Amended Complaint did not correct any of the factual allegations regarding the summer of 1992 to comport with the facts upon which plaintiff currently relies.

11, 1997, Def.'s App. at 3. On May 1, 1997, Croman filed a claim with the contracting officer seeking damages of $4,854,884.95. Pl.'s App. at 244. The claim was for the damages Croman "suffered to date as a result of the Forest Service's wrongful suspension of our operations from September 28, 1992 through August 28, 1995. *Id.* By letter dated September 11, 1997, the contracting officer issued a final decision denying Croman's claim upon finding that the "Forest Service acted properly and in accordance with federal law when the operations under the Clearview contract were delayed as a result of the listing of the marbled murrelet." Def.'s App. at 572. The contracting officer further held that the "Forest Service did not violate the terms of the Clearview contract. The Forest Service and Croman were both required by law to follow the Endangered Species Act. The listing of the marbled murrelet was a sovereign act and the Clearview contract does not provide for Croman to be reimbursed for damages when a sovereign act occurs." *Id.*

## II. Discussion

### A. The July Suspension Claim

The Supreme Court recently restated in *Steel Co. v. Citizens for a Better Environment* that determining whether subject matter jurisdiction exists is an inflexible threshold matter. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Mansfield C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)); *see also Spirit Leveling Contractors v. United. States,* 19 Cl.Ct. 84, 89 (1989) (citing *Hambsch v. United States,* 857 F.2d 763, 765 (Fed.Cir.1988)). Accordingly, this court addresses the jurisdiction issue first.

The government contends that Croman's current claim falls outside of this court's jurisdiction because it has not yet been properly presented or certified to the contracting officer for a final decision as required by 41 U.S.C. §§ 605(a) and (c)(1).[4] *See* Def.'s MTD at 9–14. The law is well settled that disputes brought to the court under the Contract Disputes Act ("CDA") must be submitted in writing to the contracting officer and if the claim exceeds the statutory threshold amount, must be certified by the contractor. *See Santa Fe Eng'rs, Inc. v. United States,* 818 F.2d 856, 858 (Fed.Cir. 1987); *see also Spirit Leveling,* 19 Cl.Ct. at 89–90 (denying contractor recovery because claim was different than that submitted to contracting officer and thus lacked required certification).

The Federal Circuit has determined that as a jurisdictional requirement the contractor must "submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir.1987). The contractor has the right on appeal to increase the amount of his claim; but the contractor may not raise any new claims not presented and certified to the contracting officer. *See Santa Fe,* 818 F.2d at 858; *AAI Corp. v. United States,* 22 Cl.Ct. 541, 544 (1991). A new claim is one that does not arise from the same set of operative facts as the claim submitted to the contracting officer. *See Tecom, Inc. v. United States,* 732 F.2d 935, 937 (Fed.Cir.1984); *SMS Data Prods. Group, Inc. v. United States,* 19 Cl.Ct. 612, 615–16 (1990) (citing *Glenn v. United States,* 858 F.2d 1577, 1580 (Fed.Cir.1988)); *see also Foley Co. v. United States,* 26 Cl.Ct. 936, 940 (1992), *aff'd,* 11 F.3d 1032 (Fed.Cir.

---

4. Under 41 U.S.C. § 605(a), "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a) (1994). Section 605(c)(1) provides:

A contracting officer shall issue a decision on any submitted claim of $100,000 or less within sixty days from his receipt of a written request from the contractor that a decision be rendered within that period. For claims of more than $100,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor.

41 U.S.C. § 605(c)(1) (1994).

1993); *AAI Corp.*, 22 Cl.Ct. at 545; *Spirit Leveling*, 19 Cl.Ct. at 91.

A claim cannot be said to arise from the same set of operative facts if adjudication of the claim by the court would "circumvent[ ] the statutory role of the contracting officer to receive and pass judgment on the contractor's entire claim." *Cerberonics v. United States*, 13 Cl.Ct. 415, 418 (1987). The Supreme Court has also noted the importance of meaningful review by the relevant agency prior to the claim's submission to the courts. *See United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36–37, 73 S.Ct. 67, 97 L.Ed. 54 (1952) ("objections to the proceedings of an administrative agency [must] be made while [the agency] has [an] opportunity for correction in order to raise issues reviewable by the courts.").

■ The relevant determination is whether the claim Croman submitted was a clear and unequivocal statement that put the contracting officer on sufficient notice of the basis for the claim currently before the court. *See Contract Cleaning*, 811 F.2d at 592. In Croman's claim to the contracting officer it stated that "on September 28, 1992 the Forest Service unilaterally suspended all operations on the sale." Pl.'s App. at 245. The claim alleged that the suspension was to allow consultation with the FWS on the effect of the timber sale on the marbled murrelet.

*Id.* September 28, 1992 is the date when the FWS listed the marbled murrelet as threatened under the ESA. 57 Fed.Reg. 45,328 (1992). It is this date that Croman presented to the contracting officer as the triggering event for its claim under the CDA.

In March of 1999, nearly two years after submitting its claim to the contracting officer, Croman attempted more fully to explore the factual basis of its claim *See* Cross Deposition, Def.'s App. at 739.[5] Now, Croman claims that it was not the FWS's listing of the marbled murrelet on September 28, 1999 that caused it damage, but rather the Forest Service's unilateral suspension of the contract sometime in July 1992.[6] PSPFUF at ¶ 79. This factual discrepancy demonstrates that Croman's claim before the contracting officer was not a "clear or unequivocal statement" of the claim currently before the court as would be required for this court to exercise jurisdiction. Indeed, Croman made a clear and unequivocal statement of a claim to the contracting officer, but that claim is not the claim it urges here. The contracting officer was simply not "on notice" of the basis of the claim. While it is possible to imagine an unartfully framed claim that nonetheless put the contracting officer on notice of the claim's basis, such is not the case here. It would subvert the statutory

---

**5.** Croman presented its claim to the contracting officer on May 1, 1997. In March of 1999, Croman changed the basis for its claim by stating that its operations were suspended by the Forest Service in July of 1992. *See* PSPFUF at ¶ 79. In Mr. Cross's deposition ten days later he explained why he believed the suspension must have occurred in July instead of September as stated in Croman's claim to the contracting officer and in its complaint filed with this court:

    A:  When we talked about this, and we're trying to relive this son of a gun from X number of years ago, seven years ago, I'm trying to figure out how all this happened. And as we're redoing this, we realized that the suspension did not occur on September 28th. So we went back through the scale sheets and came up not—this was already in place, but we went back and checked the scale sheets to make sure this was correct....

    Q:  And when did this occur?

    A:  About a week ago....

    Q:  [W]hat prompted you to undertake this review of these records?

    A:  Our legal counsel called and asked for better explanation than what we had written down on the interrogatory the first time. Not on—and it was, we talked about answers to the interrogatory. And .he said we've got to do a better job of putting this thing together....

    Q:  Now, prior to the complaint which has been marked Exhibit No. 2 being filed in this case, had you previously tried to put the facts in this case together, as you use the term?

    A:  I'm not sure when. I told you that I tried to put this thing together about a week ago.

    Q:  Had you ever previously made any efforts to put the facts of the Clearview timber sale together?

    A:  Not really.

Def.'s App. at 739–40.

**6.** The court notes that despite the change in its key factual allegation, Croman has failed to amend its complaint to comport with what it currently argues in its reply brief.

purpose of requiring contractors first to submit their claims to the contracting officer if plaintiffs were allowed first to submit a claim based on an unexamined factual premise and then permitted later to investigate for the first time and set forth an altered factual basis for a claim before this court.[7] *See generally Cerberonics,* 13 Cl.Ct. at 417; *Tucker,* 344 U.S. at 38, 73 S.Ct. 67.

The cause and surrounding circumstances of the alleged unilateral suspension are clearly operative facts in the contracting officer's assessment of whether the government's actions were authorized under the contract or immune under the sovereign acts doctrine. The contracting officer specifically relied on Croman's characterization of the triggering event of the alleged suspension when it found that "the listing of the marbled murrelet by the FWS was a sovereign act. The Clearview contract does not contain a provision which provides that Croman is entitled to damages for monetary losses allegedly sustained as a result of a sovereign act." Def.'s App. at 570. All of the contracting officers's findings were based on Croman's allegation that it was the listing of the marbled murrelet that was the impetus for the suspension. *See id.*[8] The contracting officer did not have before her any claims of suspension or surrounding facts for governmental actions prior to the September 28, 1992 listing of the

marbled murrelet by the FWS.[9] Therefore, the contracting officer did not have notice of Croman's current claim that the suspension was triggered by an alleged Forest Service action in July 1992. By changing the cause of alleged contract suspension, Croman has failed to provide the contracting officer with a clear and unequivocal statement sufficient to provide adequate notice of the basis of the claim. *See ECC Intern. Corp. v. United States,* 43 Fed.Cl. 359, 366 (1999) (quoting *Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d at 592). Accordingly, this court does not have jurisdiction to hear Croman's claim that it was suspended in July 1992. Because the contracting officer was only presented with governmental acts surrounding the listing of the marbled murrelet as threatened under the ESA on or around September 28, 1992 as the basis for Croman's claim, this court has jurisdiction to consider only that claim.

Even if the similarity between the claim before the contracting officer and what Croman now argues before this court were viewed as sufficient to justify this court's jurisdiction for Croman's entire claim, Croman's Motion for Summary Judgment fails due to the disputed issues surrounding its current claim that the Forest Service unilaterally suspended its operations in July 1992.

---

7. Croman cites *Laidlaw Envtl. Services, Inc. v. United States,* 43 Fed.Cl. 44, 50 (1999) as standing for the proposition that a plaintiff need only submit the general nature of a claim. Plaintiff's Response to Defendant's Motion to Dismiss, July 15, 1999 ("Pl.'s Response") at 5. This argument fails because different governmental defenses would apply to Croman's July 1992 allegation than would apply to its previously-submitted September 1992 factual scenario. The *Laidlaw* court specifically applied the *Cerberonics* test: whether allowing jurisdiction would circumvent the statutory role of the contracting officer to receive and pass judgment on the contractor's claim. *Laidlaw,* 43 Fed.Cl. at 50. While Croman argues that only the date of the suspension has changed, it is clear that the contracting officer's dismissal of Croman's claims was based on the specific factual scenario of Croman's claim, i.e., the listing of the marbled murrelet by the FWS as the basis of the claim—which in turn led to the government's defense of the sovereign acts doctrine. While Croman's claim of unauthorized unilateral suspension on September 28, 1992 might be superficially characterized as being of the same general nature, i.e., "unauthorized sus-

pension," as the current claim of a late July suspension, the event that triggered the alleged suspension has been changed. This change affects the legal defenses available to the government and, accordingly, the legal defense used by the contracting officer in her final decision.

8. *See also ECC Intern. Corp. v. United States,* 43 Fed.Cl. 359 (1999) where the court addressed a similar factual "discovery" at a late date in the proceedings. The *ECC* court noted that the plaintiff "may not overcome its failure to provide adequate notice of a claim that it 'rediscovered' ... by imputing to the contracting officer the conclusions that plaintiff presumes she would have drawn had such claim been presented properly." *Id.* at 367.

9. The court notes that Croman's factual shift from basing its claim on events that occurred in September of 1992 to July 1992 appears to be a device to avoid the defense raised by the contracting officer, i.e., that the sovereign acts doctrine applies to the September 28, 1992 listing of the marbled murrelet.

The essential issue in dispute is whether the Forest Service did, in fact, unilaterally suspend Croman's operation in July 1992. This disputed issue is material because if there were no unilateral suspension ordered by the Forest Service, that fact would undermine Croman's entire legal argument. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505; *Jay v. Secretary of Health and Human Services*, 998 F.2d 979, 982 (Fed.Cir.1993). A fact is material if it might significantly affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *Jay*, 998 F.2d at 982. If the moving party demonstrates an absence of a genuine issue of material fact, the burden then shifts to the non-moving party to show that a genuine issue exists. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562–63 (Fed.Cir.1987). Alternatively, if the moving party can show there is an absence of evidence to support the non-moving party's case, then the burden shifts to the non-moving party to proffer such evidence. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The court must resolve any doubts about factual issues in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefits of all favorable inferences and presumptions run. *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984). The fact that both parties have moved for summary judgment does not relieve the court of its responsibility to determine the appropriateness of summary disposition. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (citing *Mingus Constructors, Inc. v.*

*United States*, 812 F.2d 1387, 1391 (Fed.Cir. 1987)).

As set forth in *Celotex*, Croman bears the initial burden of demonstrating the absence of genuine issues of fact regarding the alleged July 1992 suspension. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Croman's most recent argument that its operations were suspended in July 1992 is not well supported by the evidence and is contested by the Forest Service. *See* Pl.'s Supp.App. at 346 (Mr. Cross testified that "we have not been able to come up with any" documents that relate to the suspension of the sale.). The only documents offered by Croman that relate to its operations between July and September 1992 are log production reports. *Id.* According to the production reports, in the first half of July, Croman removed 80 loads; and in the first half of August, it removed 14. *Id.* at 348. From the apparent decrease in log production between the two week periods at the beginning of the two months, Croman argues that the Forest Service "had suspended our cutting." *Id.* at 349. Croman does not explain why lowered production necessarily means that there was a unilateral suspension in this case when, over many prior contract periods, Croman and its predecessors had harvested no timber, all without allegations of suspension. *See* Def.'s App. at 568 (noting that Croman removed no volume from 1984 to 1988). Evidence that Croman was harvesting less or no timber in any given time frame does not establish that Croman's operations were suspended by the Forest Service. *See, e.g.*, DPFUF at ¶ 6.

Croman's only support for the alleged July suspension is contained in three depositions of Croman personnel taken almost seven years after the relevant events. Mr. Cross, secretary and part-owner of Croman, stated in a March 18, 1999 deposition that he received a phone call from Mr. Wilson of the Forest Service in late July 1992 regarding a possible marbled murrelet sighting. Pl.'s App. at 353–54. Mr. Cross further stated that during that call Mr. Wilson said something to the effect that "we are going to shut the timber sale down" or suspend operations, but Mr. Cross did not recall the precise wording used by Mr. Wilson. *Id.* at 354–55.

During the March 18, 1999 deposition, Mr. Cross also stated, "I don't recall any specifics that I can relate to you" about conversations with Mr. Wilson about the marbled murrelet but stated that several such conversations had occurred in the last half of July 1992. *Id.* at 356. Mr. Cross stated that he received a letter "[i]n the last half of July" noting that "operations are suspended on the Clearview timber sale" from Ken Slater, the forest supervisor contracting officer. Pl.'s App. at 374. However, the government argues that "Mr. Slater, who was acting as the contracting officer for all purposes of this contract, denies ever having suspended the contract." Tr. at 26; *see* Deposition of Mr. Slater, September 10, 1998 at 104.

Mr. Cross's deposition testimony as to the circumstances of the alleged unilateral suspension is in conflict with his own testimony given closer to the date of the actual events. Declaration of Mr. Cross, Pl.'s App. at 296 ("On or about October 9, 1992, the Forest Service informed us that it was submitting the Clearview timber sale to the Fish and Wildlife Service for consultation under the Endangered Species Act and that our operations on the sale were suspended until the consultation was completed."). These discrepancies are explainable if Croman failed to take the time carefully to construct its claim before the contracting officer and in preparation for filing its complaint before this court. *See* Cross Deposition, Def.'s App. at 739 (when Mr. Cross was asked in March 1999 when he discovered that he was mistaken as to the timing of the alleged suspension, he replied, "[a]bout a week ago."). Otherwise, the court is to believe that Mr. Cross' recollections of the suspension closer to the time of the actual events were not as clear as in his recent deposition taken almost seven years after the alleged suspension. In either circumstance, the account of events put forward in the most recent round of plaintiff's pleadings is inherently disputable.

In addition, both the Forest Service's contract representative and the contracting officer deny having ordered the contract to be suspended in July 1992. DPFUF at 9, 10. Moreover, a management directive relevant to the contract and issued in May 1992 specifically contradicts the allegation that the Forest Service would suspend Croman during the period where marbled murrelets were a species only proposed for listing as threatened. Pl.'s Supp.App. at 512 ("Operations *will not* be suspended during the period the murrelet is proposed for listing unless the site is determined to be occupied."). The government argues that Croman cooperated with the Forest Service and temporarily suspended operations while the Fish and Wildlife Service determined the area necessary to protect the Marbled Murrelet. Tr. at 28 ("the response to Interrogatory 1 is completely consistent with what appears to have occurred in this case, and that is a tacit understanding that the sale would remain suspended"). It is possible that, in light of growing environmental concerns, neither the Forest Service nor Croman would have been allowed to authorize harvesting during the relevant periods of time. *See* Def.'s App. at 570 ("neither the Forest Service nor Croman could have proceeded with harvesting on the Clearview sale until consultation with the FWS was completed").

Croman's lack of documentary evidence and self-contradicting testimony precludes summary judgment in its favor on any legal issue relating to the alleged unilateral suspension of the contract in July 1992.

### B. The September Suspension Claim

Croman's Motion For Summary Judgment only argues Count One of its Complaint, "Unauthorized Suspension." *See* Pl.'s MSJ at 1; Complaint at ¶¶ 36–39. Defendant's Cross Motion for Summary Judgment seeks the court's ruling on Count One, and also on Count Two, "Unreasonable Suspension." *See* Def.'s MTD at 1; Complaint at ¶¶ 40–74.

#### 1. Count One: Unauthorized Suspension

Croman argues that the "government suspended [its] operations under the Clearview contract from October 9, 1992 to August 28, 1995, despite the fact that there was no provision in the Clearview contract which authorized the government to do so." Pl.'s MSJ at 1. Defendant argues that "the decision to list the marbled murrelet as threatened, the statutory requirements for consul-

tations prior to the commitment of resources, and the possibility of the requirement to suspend the Clearview sale, constitute sovereign acts for which the Government is not liable." Def.'s Reply at 29. The court finds as a matter of law that the sovereign acts doctrine applies to the listing of the marbled murrelet by the FWS and subsequent actions by the Forest Service to comply with the requirements for protection of the marbled murrelet under the Endangered Species Act.

The determinative issues in Count One of plaintiff's Complaint are questions of contract interpretation and thus are questions of law particularly suited to resolution by summary judgment. *See Gentex Corp. v. Donnelly Corp.*, 69 F.3d 527, 530 (Fed.Cir.1995). The contract before the court specifically provided for governmental interruptions in operations. *See* Def.'s App. at 209 (C8.22), Pl.'s App. at 191 (C6.311). Paragraph C8.22 provides for Contract Term Adjustments ("CTAs") when:

> (a) Purchaser experiences delay in starting scheduled operations or *interruption in active operations* either of which stops removal of Included Timber from Sale Area through curtailment in felling and bucking, yarding, skidding and loading, hauling or road construction, as scheduled in B6.31, of 10 or more consecutive calendar days during a Normal Operating Season *due to causes beyond Purchaser's control, including* but not limited to acts of God, acts of the public enemy, *acts of Government*, labor disputes, fires, insurrections or floods.

Def.'s App. at 210 (emphasis added).

The language in C8.22 clearly anticipates and provides for governmental delay and interruptions in Croman's operations. *See id.* It is undisputed that Croman experienced some interruption in its operations in 1992. No one disputes that Croman, the purchaser, could not control the environmental causes of the interruption. The "acts of government" that are acknowledged by both parties on and after September 28, 1992 are the FWS's listing of the marbled murrelet as threatened under the ESA and the resulting consultation of the FWS with the Forest Service. Ac-

cordingly, Croman qualifies under Paragraph C8.22 for a CTA. Croman acknowledges that one remedy that it is entitled to as a result of the interruption of its operations is a Contract Term Adjustment. Pl.'s Reply at 30, n. 32. But Croman argues that the suspension breached the contract, entitling Croman to monetary damages. *See* Complaint at ¶¶ 38, 39.

In its Cross Motion for Summary Judgment, the government argues that even if it had "suspended the Clearview sale contract in September 1992 in order to comply with environmental laws and regulations ... and the suspension otherwise would have constituted a breach of contract, the alleged suspension would have constituted a sovereign act, for which the government is not liable under the contract." Def.'s MTD at 26.

█ Whether or not explicitly stated in the contract, the sovereign acts doctrine "comprises an inherent element of every Government contract." *Walter Dawgie Ski Corp. v. United States*, 30 Fed.Cl. 115, 131 (1993) (citing *Hughes Communications Galaxy, Inc. v. United States*, 998 F.2d 953, 958 (Fed.Cir.1993)). Under the doctrine, the government escapes contractual liability for public and general acts taken in a sovereign capacity for public good. *See Walter Dawgie*, 30 Fed.Cl. at 131 (citing *Fern v. United States*, 15 Cl.Ct. 580, 586 (1988)). Generally, if the government action takes a public and general nature and avoids a principal and primary focus on the relationship with the injured party, the act constitutes a sovereign act for which no contract liability arises. *See id.* at 131–32 (citing *Sun Oil Co. v. United States*, 215 Ct.Cl. 716, 572 F.2d 786, 817 (1978)).

█ The FWS's decision to list the marbled murrelet as a threatened species under the ESA is a sovereign act because it is of a public and general nature and not directed at the Forest Service's relationship with Croman. *See id.; see also Connolly v. Pension Benefit Guarantee Corp.*, 475 U.S. 211, 225, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986); *Horowitz v. United States*, 267 U.S. 458, 461, 45 S.Ct. 344, 69 L.Ed. 736 (1925).

The next question is whether or not the Forest Service was required by the ESA to consult with the FWS and interrupt Croman's operations beginning on September 28, 1992. Croman cites several factually distinguishable cases for the proposition that when "agency action that is purportedly pursuant to, but not required or mandated by a sovereign act interferes with a contract, the sovereign act defense does not apply and the agency is liable under the contract if its action is a breach of that contract." Pl.'s Response at 56. However, Croman fails to cite to the binding statutory language of the ESA and the duties that the ESA imposed on the Forest Service and, in turn, on Croman as a result of the listing of the marbled murrelet by the FWS.

Section 7(a)(2) of the ESA imposes on federal agencies, like the Forest Service, a clear duty:

> Each Federal agency *shall*, in consultation with and with the assistance of the Secretary [of the Interior], *insure that any action* authorized, funded, or carried out by such agency (hereinafter in this section referred to as an "agency action") *is not likely to jeopardize the continued existence of any endangered species or threatened species* or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary, after consultation as appropriate with affected States, to be critical, unless such agency has been granted an exemption for such action by the Committee pursuant to subsection (h) of this section. In fulfilling the requirements of this paragraph each agency shall use the best scientific and commercial data available.

16 U.S.C. § 1536(a)(2) (1994) (emphasis added). Consultations under the ESA apply to the execution of federal contracts. *See, e.g., Natural Resources Defense Council v. Houston,* 146 F.3d 1118, 1125–27 (9th Cir.1998). As of the September 28, 1992 listing, the Forest Service was in consultation with the FWS and was thereby required to follow the express statutory language of insuring that any of its actions would not "jeopardize the continued existence" of the threatened marbled murrelet.

In addition, section 7(d) of the ESA requires that during a consultation, a federal agency may not make any "irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate" the no-jeopardy requirement. 16 U.S.C. § 1536(d). Allowing additional felling of timber has been found by at least one court to constitute a *per se* "irreversible or irretrievable commitment of resources" in violation of section 7(d). *See Pacific Rivers Council v. Thomas,* 30 F.3d 1050, 1056 (9th Cir.1994). Accordingly, the Forest Service had a duty, upon the listing of the marbled murrelet, to "insure that any action [it] authorized" did not jeopardize the marbled murrelet. Because one of the "actions" that was at the time of the listing "authorized" by the Forest Service was the cutting of timber on government property by Croman, the Forest Service was required by the relevant provisions of the ESA not to permit Croman to continue. *See* 16 U.S.C. § 1536(d).

In *Natural Resources Defense Council v. Houston,* 146 F.3d 1118 (9th Cir.1998), the Federal Bureau of Reclamation entered into long-term contracts involving water rights with several parties prior to the listing of the chinook salmon under the ESA. *Id.* at 1125–27. Upon the listing, the federal agency "had an affirmative duty to ensure that its actions did not jeopardize [the] endangered species" and to engage in consultation pursuant to the ESA. *Id.* at 1127. The court upheld the District Court's finding that executing the contracts after the species was listed but before consultation was complete was an "irreversible and irretrievable commitment of resources" in violation of section 7(d) of the ESA. *Id.* at 1128. Similarly, if the Forest Service had allowed Croman to cut down additional timber (clearly an irreversible and irretrievable commitment of resources) after the listing but before completing the required consultation, the Forest Service would have violated its statutory duty. *See id.*

The only possibly relevant exception to the ESA's consultation requirement occurs when

the putative "agency action" does not involve any "discretionary" federal involvement or control. *See id.* at 1125–26; 50 C.F.R. § 402.03 (section 7 requirements apply to all actions in which there is "discretionary Federal involvement or control."). The Ninth Circuit rejected the water-right holder's argument that the existence of their long-term contracts prior to the listing under the ESA meant that the agency had no discretion to alter the terms of the contract. *NRDC v. Houston,* 146 F.3d at 1125–26. Due to the fact that the contract allowed the agency some discretion in renewing the contract or adjusting the action, this discretion, however minimal, was sufficient to trigger the ESA's section 7 requirements. *Id.*[10] Because the Forest Service retained some discretionary control or involvement in the Croman contract, it was reasonable for the agency to conclude that the consultation requirement of the ESA was triggered. *See id.;* Def.'s App. at 210 (C8.22 "interruption in active operations ... due to ... acts of Government"); Pl.'s App. at 191 (C6.311 "subject to the written approval of Forest Service").

The enactment of the ESA, the FWS's listing of the marbled murrelet and the implementation by the Forest Service of ESA requirements with respect to the marbled murrelet all constituted sovereign acts. On this basis, the court finds that summary judgment for the defendant should be granted as to Croman's Count One for "unauthorized suspension." *See* Complaint at ¶¶ 36–39.

2. Count Two: Unreasonable Suspension

In Croman's May 1, 1997 letter to the contracting officer it also complains that the Forest Service "violated its duty not to unduly hinder [Croman's] performance." Pl.'s App. at 247. When the contracting officer responded to Croman's claim, she focused on two issues alleged by Croman: that there

was no provision in the contract permitting the Forest Service to unilaterally suspend operations in the absence of a breach; and that the consultation with the FWS was "probably unnecessary" since the sale was located well inland and surveys were not conducted in 1993. Def.'s App. at 567. The contracting officer concluded that the "Forest Service acted properly and in accordance with federal law when the operations under the Clearview contract were delayed as a result of the listing of the marbled murrelet." Def.'s App. at 572. While the contracting officer states as a fact that "Croman could not go forward with the harvest ... until certain steps had been taken under the [Endangered Species Act]," she does not evaluate in any way the propriety of the steps taken, a matter fairly raised by Croman's claim, except to conclude that the Forest Service acted "properly." *Id.*

Croman did not move this court for summary judgment on the "unreasonable suspension" claim. However, the defendant's cross motion for summary judgment was drafted to encompass all of Croman's claims, including Count Two, Unreasonable Suspension. Def.'s MTD at 1.

Because of the focus of the pending motions on the issue of whether or not the sovereign acts doctrine applies in this case, the parties have not addressed the scope, if any, of an alleged government "duty not to unduly hinder [a contractor's] performance" in a case where the sovereign acts doctrine has been found to apply. Nor has a record of potentially relevant facts been developed on this issue. Accordingly, Count Two is not ripe for decision on summary judgment.

III. Conclusion

Accordingly, based on the foregoing, it is ORDERED, as follows:

1. Plaintiff's Motion for Leave to Submit Supplemental Authority is GRANTED.[11]

---

10. The court notes that in a decision prior to *NRDC v. Houston,* the 9th Circuit permitted an agency to conclude that there was no discretion but to follow a right-of-way agreement and that section 7 compliance was not necessary. *See Sierra Club v. Babbitt,* 65 F.3d 1502, 1509 (9th Cir.1995). However, that case was premised on the court's deference to the agency interpretation

of the ESA and its own regulations. *See id.* The court found that the agency's interpretation was reasonable under the deferential standard of review of the agency's actions. *See id.*

11. The court considered the Armed Service Board of Contract Appeals decision in *Home Entertainment, Inc.,* ASBCA No. 50791, 1999 WL

2. Plaintiff's Motion for Summary Judgment with respect to Count One of its Amended Complaint is DENIED.

3. Defendant's Motion to Dismiss is GRANTED with respect to plaintiff's claims based on events occurring in July 1992 and up to September 28, 1992.

4. Defendant's Motion for Summary Judgment with respect to Count One of plaintiff's Amended Complaint is GRANTED.

5. Defendant's Motion for Summary Judgment with respect to Count Two of plaintiff's Amended Complaint is DENIED.[12]

669405. Defendant's Motion to Extend Time to Respond is DENIED.

6. The parties shall file a status report with the court on or before October 22, 1999, proposing a schedule for further proceedings in this matter.

12. This opinion also leaves for later consideration plaintiff's takings claim. *See supra* n. 3.