**654**

CROMAN CORPORATION, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 98–405 C.

United States Court of Federal Claims.

Feb. 15, 2002.

Alan I. Saltman, Washington, DC, for plaintiff. Richard W. Goeken, Washington, DC, of counsel.

John S. Groat, with whom were Kathryn A. Bleecker, Assistant Director, David M. Cohen, Director, and Stuart E. Schiffer, Acting Assistant Attorney General, Civil Division, Department of Justice, Washington, DC, for defendant. Laurie Ristino and Lori Jones, Department of Agriculture, and Susan Cook, Environmental and Natural Resources Division, Department of Justice, Washington, DC, of counsel.

## ORDER

HEWITT, Judge.

Before the court is Plaintiff's Motion for Reconsideration of the Court's Order Filed July 12, 2001 (Mot.Reconsid.). Plaintiff argues that the court's Opinion and Order of July 12, 2001 (Opinion), see 49 Fed.Cl. 776 (2001), was contrary to authority. The court addresses plaintiff's contentions, corrects two erroneous statements in its Opinion to which plaintiff has drawn the court's attention, and otherwise denies plaintiff's motion.

Plaintiff argues that *Envtl. Prot. Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073 (9th Cir.2001),[1] controls this case and requires a different result than the court reached. Mot. Reconsid. at 4–6. In *Simpson Timber*, the Court of Appeals for the Ninth Circuit held that the United States Fish and Wildlife Service (Fish and Wildlife) is not required to reinitiate consultation upon the listing of a species as threatened once a separate consultation process regarding a different species is complete. 255 F.3d at 1079–83. This court stated in its Opinion that *Simpson Timber* was distinguishable because this case does not involve the reinitiation of consultation.

---

1. Since the filing of plaintiff's motion, this decision has been reported as *Envtl. Prot. Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073 (9th Cir. 2001). Accordingly, the court's citations will be to the Federal Reporter.

*Croman,* 49 Fed.Cl. at 784 n. 8. Plaintiff has submitted with its motion a request of the United States Forest Service (Forest Service) for consultation with Fish and Wildlife, dated June 18, 1990 regarding the northern spotted owl and Fish and Wildlife's response, dated July 23, 1990. Plaintiff's Reconsideration Appendix (Pl. Reconsid. App.) at 615, 643. The court agrees with plaintiff that its recent filings indicate a consultation on the Clearview sale was initiated in 1990 regarding a different species and that the subsequent consultation regarding the marbled murrelet represented a reinitiation of consultation.

The court also distinguished *Simpson Timber* on the ground that this case does not involve the "exercise of control through a permit." *Croman,* 49 Fed.Cl. at 784 n. 8. But plaintiff correctly points out, *see* Mot. Reconsid. at 5, that the same considerations apply to an agency's decision to grant a permit as to other agency decisions regarding the protection of endangered or threatened species. *See* 16 U.S.C. § 1536(a)(1) (2001) (requiring consultation to ensure that "any action authorized, funded, or carried out" by an agency does not jeopardize the continued existence of endangered or threatened species); 50 C.F.R. § 402.02 (2002) (defining "action" as including "actions intended to conserve listed species or their habitat" and "the granting of ... permits"). The court's statements in its Opinion that *Simpson Timber* was distinguishable because it involved the issuance of a permit and the reinitiation of consultation were therefore incorrect and are hereby corrected. Nevertheless, for the following reasons, the court does not believe that *Simpson Timber,* even if it were controlling authority for this court, warrants a different result than the court reached in its Opinion.

Plaintiff argues that *Simpson Timber* illustrates that an agency may only reinitiate consultation regarding the impact of a contract on a threatened or endangered species when the agency has retained specific discretionary authority to protect that species. Mot. Reconsid. at 6–10. Plaintiff contends, *see* Mot. Reconsid. at 5, that *Simpson Timber* also illustrates that the court improperly

relied on *Natural Res. Def. Council v. Houston,* 146 F.3d 1118 (9th Cir.1998) in holding, in its Opinion and Order of October 1, 1999, that the suspension of the contract was authorized. *See Croman Corp. v. United States,* 44 Fed.Cl. 796, 806–07 (1999). The court does not believe that *Simpson Timber* stands for those propositions.

*Simpson Timber* involved an incidental take permit issued to a timber company pursuant to 16 U.S.C. § 1539(a)(1). *Simpson Timber,* 255 F.3d at 1076–77. The permit required that the defendant timber company submit harvesting plans designed to "[m]odify silvicultural systems as appropriate to ensure compatibility with the habitat requirements of other species found within Simpson's ownership that are considered sensitive by state and federal regulatory agencies." *Id.* at 1077. The plaintiff, a nonprofit organization, sued for an injunction against timber harvesting after two species were added to the threatened species list, arguing that Fish and Wildlife was required to reinitiate consultation to address the impact of the permit on those species. *Id.* at 1074, 1079. The plaintiff argued that this provision required Fish and Wildlife to reinitiate consultation if the agency found that the permit could affect species subsequently listed as threatened. *Id.* at 1080–81. The court disagreed, interpreting the language of the permit as providing protection only for those species that were listed as threatened at the time the permit was issued, not for those species that were subsequently listed. *Id.* at 1081. In *Simpson Timber,* therefore, the permit contained a specific grant of discretionary authority. The Ninth Circuit concluded that the specific grant of discretionary authority was intended to protect species other than those that were the subject of the suit.

■ Here, however, the discretionary authority reserved by defendant in the contract neither contemplates the protection of specific endangered species nor, expressly or by implication, excludes other species from its scope. Rather, as the court discussed in its Opinion and Order of October 1, 1999, the contract reserves to the Forest Service discretionary authority in the adjustment of

time permitted under the contract when "acts of Government" halt contract operations. *Croman,* 44 Fed.Cl. at 806–07. Paragraph C8.22 of the contract provided that "the contract term shall be adjusted in writing to include additional calendar days" in the event of "interruption in active operations" by, *inter alia,* "acts of Government." *Croman,* 49 Fed.Cl. at 779. In itself, the provision that the contract term shall be adjusted when operations are interrupted by acts of Government suggests that the Forest Service has authority to suspend contract operations. Adjusting the contract term to account for the disruption caused by an act of Government necessarily requires putting the contract on hold until the act of Government is no longer interfering with operations. Paragraph C6.311 of the contract makes this explicit by providing that the Forest Service retained authority to approve both plaintiff's initial plan of operations and any revisions thereto:

> Within 60 days of extension of contract, Purchaser shall furnish Forest Service a written general plan of operation which shall be in addition to the annual operating schedule required under B6.31. The plan shall set forth planned periods for and methods of road construction, timber harvesting, and completion of slash disposal, erosion control measures and other contractual requirements to complete sale. Forest Service written approval of the plan of operation is prerequisite to commencement of Purchaser's Operations. Purchaser may revise this plan of operations when necessitated by weather, markets or other unpredictable circumstances, subject to the written approval of Forest Service. In the event of delays beyond the control of Purchaser which qualify for Contract Term Adjustment, the plan of operations shall be mutually adjusted as necessary to accommodate the adjusted contract period.

Appendix to Plaintiff's Reply in Support of its Motion for Reconsideration (Pl.'s Reply App.) at 664. This provision makes clear

that the Forest Service must approve any changes to plaintiff's plan of operations caused by outside forces beyond the control of plaintiff and the Forest Service. The listing of the marbled murrelet as a threatened species (with the accompanying direction that the Forest Service "review and assess the potential impacts of [timber sales in Washington, Oregon and California] on the murrelet," *see* Endangered and Threatened Wildlife and Plants, 57 Fed.Reg. 45,328, 45,337 (Oct. 1, 1992)) (codified at 50 C.F.R. Part 17), was an event beyond the control of plaintiff or the Forest Service that disrupted plaintiff's contract performance and necessitated a change in plaintiff's plan of operations. As the court found in its October 1, 1999 Opinion and Order, *see Croman,* 44 Fed.Cl. at 807, the listing was an "act of Government" that entitled plaintiff to a Contract Term Adjustment. Because the Forest Service had discretionary authority in adjusting the contract's schedule in the event of an act of Government, *see* Pl.'s Reply App. at 664 ("In the event of delays beyond the control of Purchaser which qualify for Contract Term Adjustment, the plan of operations shall be *mutually* adjusted as necessary to accommodate the adjusted contract period") (emphasis added), it retained discretionary authority over contract operations for purposes of the Endangered Species Act (ESA), 16 U.S.C. §§ 1531–1544 (1994).

To be sure, it does not appear that the Forest Service consulted plaintiff before suspending operations on the contract, and in that sense the adjustment to plaintiff's plan of operations caused by the initial suspension was not "mutual." [2] The present question, however, is whether the Forest Service had continuing discretionary authority for purposes of the ESA. The requirement of a "mutual" adjustment implies that the Forest Service's consent was necessary for the adjustment of the contract schedule to accommodate a delay caused by an "act of Government." The Forest Service's suspension of the contract in order to reinitiate consulta-

---

**2.** To the extent that the Forest Service's suspension of the contract without prior consultation of plaintiff may be considered a breach of the contract's requirement of a "mutual" adjustment in the event of a delay caused by "acts of Govern-

ment," that breach of contract claim was not raised before the contracting officer, *see* Defendant's Appendix at 554–59, and is therefore not before the court.

tion was therefore authorized by law.[3] The ESA required that the Forest Service, "in consultation with and with the assistance of [Fish and Wildlife], insure that any action authorized, funded, or carried out [by the Forest Service] . . . is not likely to jeopardize the continued existence of any endangered species or threatened species." 16 U.S.C. § 1536(a)(2) (2001). Plaintiff's logging operations in the Klamath National Forest were "authorized" by the Forest Service at the time of the listing of the marbled murrelet as a threatened species. The Forest Service therefore had a duty, by virtue of its discretionary authority to adjust the time period for contract operations in the event that an "act of Government" disrupted contract operations, to insure that contract operations did not continue until the impact of those operations on the marbled murrelet was assessed.

Plaintiff argues that the purpose of a plan of operations is merely to ensure timely completion of the contract. Plaintiff's Reply in Support of its Motion for Reconsideration (Pl. Reconsid. Reply) at 2–7. Even assuming *arguendo* that plaintiff is correct, that fact does not signify that the Forest Service may not consider the impact of the plan on endangered or threatened species (or the requirement of complying with the ESA) when it exercises its discretion in adjusting the plan of operations. If the Forest Service found it necessary to adjust the contract schedule because of a storm, it would presumably require that operations resume only after the storm has passed. Likewise, the disruptive effect of the listing of the marbled murrelet as a threatened species, and the accompanying requirement of consultation with Fish and Wildlife, required the Forest Service to delay contract operations until after concerns about the contract's effect on the marbled murrelet were addressed. The initial purpose of the plan of operations does not govern the reasons that may be cited for adjusting that plan.

 Plaintiff also argues that the parties' failure to add another clause to the contract

specifically providing for the Forest Service's authority to protect endangered species indicates that the Forest Service had no such authority under this contract. Pl. Reconsid. Reply at 8–9. The authority to suspend contract operations in the event of an "act of Government" under the contract is not set out with specific examples. That another clause could have specified the Forest Service's authority to suspend contract operations in the exact circumstance of this or some other particular and limited case, however, does not mean that the Forest Service lacked such authority under the existing terms of the contract. Absent an ambiguity in a contract, the court looks only to the plain meaning of the text of the contract, not to extrinsic evidence. *City of Tacoma v. United States*, 31 F.3d 1130, 1134 (Fed.Cir.1994). The provisions discussed above do not deal separately with the protection of endangered species in a way that makes their implications for such protection unmistakable, but neither are they ambiguous. The court therefore finds that resort to extrinsic evidence to determine the contract's meaning is unwarranted in this case.

Plaintiff also argues that *Simpson Timber* forecloses agency action on a contract pursuant to § 1536(a) of the ESA unless the contract specifically reserves to the agency the right to protect endangered species. The court believes that plaintiff has misread the holding in *Simpson Timber.* The plaintiff there argued that "existing contracts and permits that are in no way related to the ESA or do not provide mechanisms to protect threatened and endangered species may require alteration if necessary to comply with the ESA." 255 F.3d at 1082 (citations omitted). The plaintiff in *Simpson Timber* cited *Natural Res. Def. Council v. Houston*, 146 F.3d 1118 (9th Cir.1998), in support of that argument. The Ninth Circuit found that *Houston* did not support the *Simpson Timber* plaintiff's argument, because the agency in *Houston* did in fact have discretionary control over the contract at issue. 255 F.3d at 1082. The Ninth Circuit in *Simpson Tim-*

---

**3.** Plaintiff also argues that paragraph C6.311 "only gives the Forest Service the right to deny approval if the purchaser's plans were inconsistent with the existing terms of the contract."

Mot. Reconsid. at 9 n.7. The court finds no support for that reading in the text of the provision.

*ber* found that the *Houston* decision did not stand for the proposition that "once the renewed contracts were executed, the agency had continuing discretion to amend them at any time to address the needs of endangered or threatened species." *Id.* Defendant here has not argued, however, that it was entitled to "amend" the contract to protect the marbled murrelet. Rather, it has argued, and the court has found, that the contract reserved to the Forest Service sufficient discretionary authority to require that the agency "insure" that action it authorized pursuant to the contract was not likely to "jeopardize the continued existence" of the marbled murrelet.

For the foregoing reasons, plaintiff's Motion for Reconsideration is GRANTED with respect to the court's statements that *Simpson Timber* is distinguishable because this case does not involve the reinitiation of consultation or the exercise of control through a permit, and DENIED in all other respects.

IT IS SO ORDERED.